**Frank HADLEY and Brian Baxter, Petitioners,**

v.

**MOFFAT COUNTY SCHOOL DISTRICT RE–1, et al., Respondents.**

No. 81SC298.

Supreme Court of Colorado, En Banc.

May 7, 1984.

Rehearings Denied May 29, 1984.

Larry F. Hobbs, Denver, for petitioners.

Paul D. Renner, P.C., John R. Rodman, Denver, for respondents.

NEIGHBORS, Justice.

We granted certiorari to review the court of appeals' decision in *Hadley v. Moffat County School District RE–1*, 641 P.2d 284 (Colo.App.1981). The court of appeals concluded that the petitioners, Frank Hadley and Brian Baxter, were not entitled to take the depositions of various members of the Board of Education of Moffat County School District RE–1 (Board) concerning their reasons for not renewing the petitioners' teaching contracts. The court of appeals also held that the trial court correctly entered summary judgment against the petitioners, who were nontenured teachers. The trial court ruled that the petitioners had produced no evidence to support their claim that the non-renewal decision was based upon their participation in constitutionally protected activities. We reverse and remand the case for further proceedings.

I.

Hadley and Baxter (plaintiffs) were employed by Moffat County School District RE–1 (defendant) as teachers at Moffat County High School from September 1974 to June 1977. On March 17, 1977, and on April 7, 1977, the Board voted not to renew the plaintiffs' teaching contracts for the 1977–1978 school year. The plaintiffs filed a complaint against the Moffat County School District, the Board, the present and former Board members, and the superintendent of schools (defendants), in the Moffat County District Court on January 18, 1978, in which they asserted four claims for relief. The first claim was that the defendants violated a teacher evaluation procedure. The second claim alleged that the school district violated certain policies of the North Central Association of Colleges and Secondary Schools (of which the district is a member) by denying them notice, reasons for non-renewal, and a hearing. The third claim made in the complaint stated that it was filed pursuant to 42 U.S.C. § 1983, and alleged that the Board deprived the plaintiffs of their property rights without due process of law. The fourth claim alleged that the plaintiffs' non-renewal was in retaliation for their participation in school district and community affairs, thus violating their federal and state constitutional rights.[1]

At the pretrial conference, the plaintiffs voluntarily moved for dismissal of their claims against all defendants except Moffat County School District RE–1 and for dismissal of their first three claims for relief against that defendant. The trial court dismissed the defendants and claims as requested by the plaintiffs. Therefore, the issues raised in this appeal are limited to the plaintiffs' fourth claim for relief against the school district.

During pretrial discovery proceedings, the plaintiffs gave notice of their intention to take the depositions of the Board members. The defendants moved for a protective order which was granted on November 8, 1978, by the trial court which ruled:

"IT IS THEREFORE ORDERED that the Motion for Protective Order is granted insofar as discovery is sought into the mental processes or procedure by which the Administrative decision was reached with respect to non-renewal of Hadley and Baxter.

1. The plaintiffs' fourth claim for relief stated in part:

"The plaintiffs have not been informed of the reasons for the non-renewal of their contracts but believe that it was at least in part in retaliation for their participation in school district and community affairs.

"The retaliatory non-renewal by the defendants of the plaintiffs' contracts was in violation of their federal and state constitutional rights under the First and Fourteenth Amendments to the United States Constitution and Article II, Section 10 of the Constitution of Colorado."

"IT IS FURTHER ORDERED that the members of the Defendant Board of Education shall not be deposed until or unless the Plaintiffs make a proper preliminary showing as required by law and obtain an Order of Court modifying this Order."

However, the trial court permitted the plaintiffs to take the depositions of Marvin Grimm, Superintendent of Schools; Robert Janka, Moffat County High School Principal at the time the plaintiffs' teaching contracts were not renewed; and Joseph Janosec, the current principal who was an administrative assistant at Moffat County High School at the time of non-renewal. Janka testified that he recommended renewal of the teaching contracts for Hadley and Baxter. Grimm stated that he recommended non-renewal for Baxter because the teacher maintained poor classroom control over students. Grimm's reasons for recommending that Hadley's contract not be renewed included being late to school twice, driving his motorbike through a school hallway on one occasion, and becoming so emotional that he once had to be removed from the gymnasium while he was coaching during an athletic contest. These incidents occurred during the first or second year Hadley taught at the high school.

In July 1979, the plaintiffs filed a motion to modify the protective order. They attached to the motion affidavits which they signed and a copy of a typewritten note purportedly signed by Janosec and delivered to Grimm. The note, dated February 21, 1977, was on a form entitled "Request for Maintenance Work" and stated:

"Marv, if the board is going to use my verbal yes or no on staff members I want to remind you of the 4 we talked about getting rid of—Baxter, Hadley, Coughman, and Bratlin. If our plans work out and I become principal I don't want them around. If we need reasons for anyone we can work them out later. I know we have talked all of this over already but with the board meeting to go over contracts next month we need to make sure and agree on these 4. Hell, this board will believe anything we tell

them so I don't think there is any cause for you to worry about reasons. We can figure out something if we need to. We damn sure don't need the kind of trouble Hadley stirred up down town.

/s/Janosec"

During their depositions, Janosec denied that he wrote the note and Grimm denied receiving it. However, Janka stated that the signature appeared to be that of Janosec. The trial court denied the plaintiffs' motion to modify the protective order.

In June 1980, the defendant filed its motion for summary judgment. On July 30, 1980, the trial court entered an order granting the motion, finding that:

"There is no indication that the Plaintiffs have *any* evidence to support their claim that the non-renewal decision was based upon constitutionally protected grounds. The deposition material indicates to the contrary....

    . . . .

"Here, the Motion and supporting material submitted by Defendant District indicates that there are no genuine issues of material fact in dispute, and Plaintiffs have not presented any opposing materials demonstrating the existence of a genuine factual controversy for resolution at trial."

(Emphasis in original.) The trial court went on to state that, after the summary judgment motion was filed, the plaintiffs failed to file any affidavits or other evidentiary material which established a factual basis for their fourth claim for relief. The court also ruled that the plaintiffs would not be allowed to examine the Board members for the first time at trial concerning the reasons for their decision not to renew the plaintiffs' contracts. The court held:

"There is not a scintilla of evidence that the testimony of any Board Member would differ in any way from that given by Grimm and Janka in their respective depositions. There has been absolutely no prima facie or threshold showing that the Board engaged in illegal or unlawful conduct, misconduct, acted with bias or

bad faith, dishonestly, corruptly, maliciously, fraudulently, with a wrongful motive. If this case proceeded to trial in this posture, the policy against fishing expeditions would be subverted, the function of the trial process itself would be subverted, and administrative tribunals and their members throughout the State of Colorado would be placed in a position requiring them to account to the judiciary by engaging in trials of every administrative decision attacked (with or without foundation in fact) on the basis of constitutionally precluded deprivations of rights. Public servants should be held accountable for their actions, but in so doing should not be subject to the harassment of going through trial proceedings on every allegation of misconduct, whether supported by any basis in fact or not."

The court of appeals affirmed the judgment of the trial court and held that under *Board of Education v. District Court*, 174 Colo. 255, 483 P.2d 361 (1971), there was no basis for taking the depositions of the Board members because the "plaintiffs made no preliminary showing of any illegal or unlawful action, misconduct, bias, or bad faith on the part of the members of the school board and no showing of a violation of the provisions of 42 U.S.C. § 1983." *Hadley v. Moffat County School District RE-1*, 641 P.2d 284, 286 (Colo.App.1981). The court of appeals further held that the plaintiffs had not shown that the Board members, in making their decision not to renew, had considered any factors other than the plaintiffs' deficiencies as teachers, and therefore, summary judgment was properly granted.

## II.

As a preliminary matter, we will address the defendant's argument that the plaintiffs' complaint does not allege a claim for relief under 42 U.S.C. § 1983. The defendant contends that the plaintiffs' claim under section 1983 was dismissed by the plaintiffs prior to summary judgment, and alternatively, that the plaintiffs were not deprived of the federal rights, privileges, or immunities which are necessary to obtain relief under the federal statute.

As noted earlier, the trial court dismissed the plaintiffs' first, second, and third claims for relief at their request. The plaintiffs' fourth claim for relief, while alleging that the plaintiffs' teaching contracts were not renewed in retaliation for the exercise of their first amendment rights, did not specifically state that it was brought under section 1983. Thus, the defendant argues that the plaintiffs no longer have a viable claim under that statute, since the third claim, which did state that it was based on section 1983, was dismissed. We disagree.

The fourth claim for relief properly incorporates by reference all prior allegations which include the plaintiffs' earlier reference to 42 U.S.C. § 1983 in the third claim. We hold that a plaintiff is not required to file an amended complaint repeating allegations contained in claims later dismissed, when the claims are incorporated by reference in a claim not dismissed. Any other result would be inconsistent with the principles of notice pleading. *See* C.R.C.P. 8; *Vance v. St. Charles Mesa Water Association*, 170 Colo. 313, 460 P.2d 782 (1969).

The defendant next suggests that the plaintiffs' complaint fails to state a claim under 42 U.S.C. § 1983 because the facts alleged do not rise to the level of deprivation of property rights. This argument is without validity as well. 42 U.S.C. § 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

■ A nontenured teacher who is employed pursuant to a one-year contract does not have a *property* right in reappointment. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Durango School District 9–R v. Thorpe,* 200 Colo. 268, 614 P.2d 880 (1980); *University of Colorado v. Silverman,* 192 Colo. 75, 555 P.2d 1155 (1976). A nontenured teacher only has a right to receive written notice from the school board of its intention not to renew the contract on or before April 15th of the year during which the teacher is employed. *See* section 22–63–110, C.R.S.1973;[2] *Durango School District,* 200 Colo. at 272, 614 P.2d at 884.

■ However, 42 U.S.C. § 1983 is not limited to deprivations of property rights. Under section 1983, a teacher is protected from *any* deprivation of constitutional rights, privileges, or immunities. Even though a teacher may have no constitutional right to a renewal of the teaching contract, a school district may not deny renewal because of the teacher's exercise of constitutionally protected rights. *See Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Durango School District,* 200 Colo. at 272, 614 P.2d at 884. In a case where a teacher is not renewed and claims that it was because of his/her exercise of protected constitutional rights, the plaintiff has the burden of showing that his/her conduct was constitutionally protected and that it was a substantial or motivating factor in the school board's non-renewal decision. The school district may avoid liability if it proves, by a preponderance of the evidence, that it would have reached the same decision concerning the teacher's non-renewal for reasons unrelated to the constitutionally protected conduct. *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979); *Mt. Healthy City School District Board of*

*Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Durango School District,* 200 Colo. at 273, 614 P.2d at 884. *See also Johnson v. Jefferson County Board of Health,* 662 P.2d 463 (Colo.1983). Under these standards, Hadley and Baxter stated a section 1983 claim because they alleged that their non-renewal was in retaliation for their participation in community and school district affairs.

### III.

We next address the principal issue in this case, whether the trial court properly issued a protective order prohibiting the plaintiffs from taking the depositions of the Board members. In *Board of Education v. District Court,* 174 Colo. 255, 483 P.2d 361 (1971), we adhered to the "mental process rule" and held that the nontenured teacher was prohibited from taking the depositions of school board members. After the school board dismissed her following notice of charges and a hearing under 1967 Perm.Supp., C.R.S.1963, 123–18–11 and –17, the teacher sought judicial review of the school board's decision in the district court, alleging that the panel chosen to hear the matter acted contrary to the evidence and made errors of law. However, the plaintiff made no allegation that the board of education considered evidence outside the record. Relying upon *Public Utilities Commission v. District Court,* 163 Colo. 462, 431 P.2d 773 (1967), in which this court adopted the mental process rule, we held that the officials of an administrative agency cannot be compelled to testify concerning the procedure or manner in which they made their findings and rendered a decision in the case. We prohibited "inquiring or probing the mental processes or procedure by which an administrative decision is reached, and the only exception to this rule is where an allegation has been made and there is a clear showing of illegal or unlawful action, misconduct, bias or bad faith on the part of the commissioners or a

---

**2.** Section 22–63–110, C.R.S.1973 (1983 Supp.), now provides that the notice must be given by

May 15.

specific violation of the applicable statute." 174 Colo. at 258, 483 P.2d at 362 (quoting *Public Utilities Commission,* 163 Colo. at 469, 431 P.2d at 777). The court concluded: "We doubt, although we do not decide, that the taking of depositions of members of an administrative tribunal can be predicated solely upon allegations of a complaint without a further showing." *Board of Education,* 174 Colo. at 258, 483 P.2d at 362. The decision in *Board of Education* was based in part on the fact that the plaintiff did not allege any wrongful conduct by the board members. We must now address the deposition issue in light of the facts that such an allegation has been made in this case and no hearing was held regarding the teachers' non-renewal.

There are at least two policy reasons which support the mental process rule. First, there is a presumption of regularity and validity which attaches to proceedings conducted by administrative agencies. In the absence of evidence to the contrary, it is presumed that such agencies have properly discharged their official duties. *United States v. Chemical Foundation, Inc.,* 272 U.S. 1, 47 S.Ct. 1, 71 L.Ed. 131 (1926); *Colorado Springs v. District Court,* 184 Colo. 177, 519 P.2d 325 (1974); *Public Utilities Commission v. District Court,* 163 Colo. 462, 431 P.2d 773 (1967). *See also Denver v. District Court,* 196 Colo. 134, 582 P.2d 678 (1978). Second, when administrative proceedings are quasi-judicial in character and resemble a judicial proceeding, the agency officials should be treated as the equivalent of judges. In *United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941), which we cited in *Board of Education* and *Public Utilities Commission,* the Supreme Court relied upon the mental process rule and held:

"The proceeding before the Secretary 'has a quality resembling that of a judicial proceeding.' ... Such an examination of a judge would be destructive of judicial responsibility. We have explicitly held in this very litigation that 'it was not the function of the court to probe the mental processes of the Secretary.' ... Just as a judge cannot be subjected to such scrutiny, ... so the integrity of the administrative process must be equally respected."

(Citations omitted.) *See also Chicago B & Q Railway Co. v. Babcock,* 204 U.S. 585, 593, 27 S.Ct. 326, 327, 51 L.Ed. 636 (1907) ("[T]he Board [of equalization] necessarily kept and evidently was expected by the statutes to keep a record. That was the best evidence, at least, of its decisions and acts." Therefore, the Court held that it was improper to allow the board members to be subjected to elaborate cross-examination regarding the operation of their minds.). It is with these justifications for the mental process rule that we analyze the issue raised here.

This case is distinguishable from *Board of Education* in two material respects. First, here, there are specific allegations that the Board members acted improperly, and second, there was no hearing of any kind in this case. In *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971), the Supreme Court stated that while the Secretary of Transportation's decision is entitled to a presumption of regularity, "that presumption is not to shield his actions from a thorough, probing, in-depth review." The Court held that a trial court may require the administrative officials who took part in the decision to testify and explain the reasons for their actions:

"Of course, such inquiry into the mental processes of administrative decisionmakers is usually to be avoided. *United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941). And where there are administrative findings that were made at the same time as the decision, as was the case in *Morgan,* there must be a strong showing of bad faith or improper behavior before such inquiry may be made. *But here there are no such formal findings and it may be that the only way there can be effective judicial review is by examining the decisionmakers themselves.*"

*Overton Park*, 401 U.S. at 420, 91 S.Ct. at 825 (emphasis added). We adopt the reasoning of the Supreme Court and hold that this rule applies in this case where the Board's action did not resemble a quasi-judicial proceeding;[3] the plaintiffs claim that the Board members' non-renewal decision was in retaliation for their exercise of constitutionally protected activities; and the plaintiffs have offered some extrinsic evidence (the note) to support their allegations.

Our rules of discovery provide that all relevant, non-privileged information should be discoverable unless it would cause annoyance, embarrassment, oppression, or undue burden or expense. C.R. C.P. 26. Discovery rules should be accorded a broad and liberal interpretation in order to effect their purpose of adequately informing the litigants of the facts giving rise to a claim or defense. *See Herbert v. Lando*, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979); *Bond v. District Court*, 682 P.2d 33 (Colo.1984). Because the action taken by the board of education was not quasi-judicial in character and because the defendant made no showing under C.R.C.P. 26(c) why the information the plaintiffs sought should be kept confidential, we conclude that the plaintiffs should be allowed to depose the Board members.

### IV.

Since the trial court erred in prohibiting discovery in the form of depositions of the Board members, summary judgment was improperly granted. "[A] party faced with a summary judgment motion is entitled to discover the facts, although they may be in the possession of the adversary." *Carter v. Jernigan*, 227 N.W.2d 131, 135–36 (Iowa 1975).

Accordingly, we reverse the judgment of the court of appeals and remand the case to the court of appeals with directions to re-

mand the case to the trial court for further proceedings consistent with this opinion.

---

3. In *Snyder v. Lakewood*, 189 Colo. 421, 542 P.2d 371 (1975), we held that the following factors support a finding of quasi-judicial action by a municipal legislative body: (1) State or local law requires adequate notice be given before action is taken; (2) state or local law requires that a public hearing be conducted; and (3) state or local law requires the determination be made by applying the facts of a specific case to certain criteria established by law.